UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER CASEY CRUZ,<br><br>    Plaintiff,<br><br>v.<br><br>JONATHAN HAMRICK,<br><br>    Defendant. | Case No. 1:13-cv-00988-LJO-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF NO. 31)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

### I.    PROCEDURAL HISTORY

Peter Casey Cruz ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. "This action now proceeds with Plaintiff's First Amended Complaint, filed on January 7, 2015, against defendant Jonathan Hamrick, M.D., on Plaintiff's medical claim under the Fourteenth Amendment." (ECF No. 19, p. 2).

On December 13, 2017, Defendant filed a motion for summary judgment. (ECF No. 31). On March 29, 2018, Plaintiff filed a provisional opposition to the motion. (ECF No. 41). On July 16, 2018, Plaintiff filed his opposition to the motion. (ECF No. 52). On July 20, 2018, Defendant filed his reply. (ECF No. 53).

Defendant's motion for summary judgment is now before the Court. For the reasons that follow, the Court will recommend that Defendant's motion for summary judgment be granted.

1

## II. PLAINTIFF'S CLAIM

### a. Summary of First Amended Complaint

Plaintiff is a civil detainee at Coalinga State Hospital ("CSH"). On March 24, 2011, Plaintiff rolled his ankle. Plaintiff was briefly given use of a wheelchair. The next day, Duncan ordered that Plaintiff's wheelchair be taken from him. Duncan ordered that Plaintiff be either moved to a downstairs unit with a wheelchair or remain on the upstairs unit without a wheelchair. Due to pain and inconvenience of moving, Plaintiff was forced to remain in the upstairs unit without a wheelchair. Plaintiff was given insufficient pain reliever medication after the injury.

Defendant Hamrick reviewed x-rays of Plaintiff's ankle, but did not see any signs of a break. He did not order an MRI or CT scan. Plaintiff demanded an MRI or CT scan. Plaintiff received an MRI after interference from the CSH patients' rights advocate and program administrator. Defendant Hamrick found upon viewing the MRI that Plaintiff had torn his tendon badly. Plaintiff received corrective surgery on June 27, 2011. Plaintiff was moved to a downstairs unit after the surgery.

Defendant Hamrick prescribed Oxycodone for the pain, but Plaintiff refused it based on previous experience with the medication. Defendant Hamrick refused to prescribe an alternative pain reliever, leaving Plaintiff in constant and immense pain.

Following surgery, unknown individuals put a trash bag over Plaintiff's ankle to cover it during shower time, but this resulted in having his dressings replaced, contrary to Dr. Smith's instructions. Plaintiff suffered swelling and pain from the early removal of the dressing.

On July 25, 2011, Plaintiff was moved to another unit and had difficulty getting assistance packing his property. He hobbled around on one foot to pack his own belongings, which was difficult because he has a 22-inch television and three sound bars, each weighing about 37 pounds. No staff member offered to help Plaintiff pack. However, they helped him move his property to the other unit.

On August 17, 2011, Dr. Smith prescribed rehabilitation. However, no one scheduled rehabilitation for him.

Plaintiff continues to suffer from pain and reduced use of his ankle.

    b. Screening Order

The Court[1] found a cognizable Fourteenth Amendment claim against Defendant for inadequate medical care based on the allegation that Defendant "knew that Plaintiff's pain medication was ineffective and refused to provide another medication, resulting in 'constant, immense pain' for three weeks." (ECF No. 7, p. 4; ECF Nos. 12, 15. 16, & 19). The case is now proceeding against Defendant on this claim. (Id.).

## III. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

    a. Defendant's Position

Defendant argues that his decision after Plaintiff's surgery to prescribe Oxycontin as an alternative pain reliever to Percocet was appropriate. (ECF No. 31, p. 9). Not only was Oxycontin a medically appropriate prescription, but Percocet was not available for prescription at CSH. (Id.). Defendant alleges that he "exercised [his] professional judgment at all times while treating Mr. Cruz for his ankle injury." (ECF No. 31-3, p. 3, ¶ 8).

    b. Plaintiff's Position

Plaintiff argues that he received inadequate medical care. Plaintiff alleges that Defendant Hamrick prescribed Oxycontin for Plaintiff's pain, but that Oxycontin is ineffective at relieving Plaintiff's pain. (ECF No. 52, p. 17). Plaintiff alleges that prior to Defendant prescribing Oxycontin, Dr. Smith (Plaintiff's orthopedic surgeon) prescribed Percocet, which was effective at relieving Plaintiff's pain. (Id.).

    c. Legal Standard for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts

---

[1] Magistrate Judge Gary S. Austin was the magistrate judge assigned to this case until October 13, 2015. (ECF No. 11).

of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981).

In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record… from which a reasonable inference… may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255. Moreover, the Court must liberally construe Plaintiff's filings because he is a prisoner proceeding *pro se* in

4

this action. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

### d. Legal Standard for Fourteenth Amendment Inadequate Medical Care Claim

As a civil detainee, Plaintiff's right to medical care is protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. Youngberg v. Romeo, 457 U.S. 307, 315 (1982); Mitchell v. Washington, 818 F.3d 436 (9th Cir. 2016). Under this provision of the Constitution, Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004) (quoting Youngberg, 457 U.S. at 321-22).

Liability may only be imposed when a defendant fails to use "professional judgment." Youngberg, 457 U.S. at 323. A defendant fails to use professional judgment when his or her decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [he or she] did not base [his or her] decision on such a judgment." Id. In determining whether a defendant has met his or her constitutional obligations, "decisions made by the appropriate professional are entitled to a presumption of correctness." Id. at 324. "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id. at 321 (quoting Romeo v. Youngberg, 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, C. J., concurring), vacated, 457 U.S. 307 (1982)).

"Under both the 'professional judgment' and the 'deliberate indifference' standards, mere negligence or medical malpractice does not violate the Constitution. Medical malpractice does not become a constitutional violation merely because the patient is institutionalized. [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Constitution…. Nor can a plaintiff base a constitutional claim on a difference of opinion with medical staff regarding the

nature of appropriate medical treatment." Cranford v. Quigley, No. CV 07-871FMCJTL, 2008 WL 5450354, at *4 (C.D. Cal. Dec. 30, 2008) (alteration in original) (citations and internal quotation marks omitted).

  e. Analysis

  To begin, much of what Plaintiff presents in his oppositions to the motion for summary judgment do not relate to Defendant or the facts at issue in this case. Instead, Plaintiff brings up facts related to claims against defendants that have already been dismissed from this case and facts related to other instances in which he allegedly received subpar medical treatment. Defendant also presents evidence and arguments not related to the claim proceeding in this case.

  This case is only proceeding against defendant Hamrick, and only on Plaintiff's claim that Defendant "knew that Plaintiff's pain medication was ineffective and refused to provide another medication, resulting in 'constant, immense pain' for three weeks." (ECF No. 7, p. 4; ECF Nos. 12, 15. 16, & 19). Accordingly, the Court will only address evidence and arguments related to whether Defendant used his professional judgment in prescribing Plaintiff pain medication. All other evidence is not relevant to the determination of Defendant's motion for summary judgment.

  As to Plaintiff's allegation that Defendant knowingly provided ineffective pain medication, Plaintiff submitted a statement, under penalty of perjury, that he informed Defendant that, based on his prior experience with Oxycontin/Oxycodone, Oxycontin/Oxycodone does not work on Plaintiff. (ECF No. 52, p. 17; ECF No. 10, p. 7). Additionally, Dr. Smith (Plaintiff's orthopedic surgeon) had prescribed Percocet (Defendant's Separate Statement of Undisputed Fact ("DSSUF") 10), which was effective at relieving Plaintiff's pain (ECF No. 52, p. 17; ECF No. 10, p. 6). Despite this, when Plaintiff returned to CSH after his surgery, Defendant prescribed Oxycontin. DSSUF 10.

  Defendant has submitted evidence, in the form of his own declaration, that he "exercised [his] professional judgment at all times while treating Mr. Cruz for his ankle injury." (ECF No. 31-3, p. 3, ¶ 8).

Defendant has also submitted evidence, in the form of a declaration from Dr. Bruce Barnett,[2] that Defendant's decision to prescribe Oxycontin was sensible. (ECF No. 31-4, p. 3, ¶ 9). Oxycontin is less vulnerable to abuse. (Id.). Additionally, unlike Percocet, it does not contain acetaminophen, and for patients with a known liver disease (such as Plaintiff), it is appropriate to limit acetaminophen prescriptions. (Id.). Moreover, Plaintiff's claim that Oxycontin was not effective on him is inconsistent with his claim that Percocet helped. (Id. at pgs. 2-3, ¶¶ 7-8). "Oxycontin is the same drug that [Plaintiff] said was effective in helping his pain when he took the drug along with acetaminophen as Percocet." (Id. at p. 3, ¶ 8). It is Dr. Barnett's professional opinion that Defendant's decision to treat Plaintiff's pain with Oxycontin was "reasonable, within the community standards of care, and showed substantial consideration for Cruz's medical condition." (Id. at ¶ 10).

Based on the evidence presented, the Court finds that Defendant's motion for summary judgment should be granted. Plaintiff presented no evidence that Defendant's treatment was a "substantial departure from accepted professional judgment, practice, or standards," Youngberg, 457 U.S. at 323, while Defendant has presented evidence that he used professional judgment, and that the treatment was reasonable and within the community standards of care. Plaintiff can testify as to how he has reacted to taking Oxycontin in the past, but Plaintiff is not a medical expert and thus cannot give expert testimony regarding the effectiveness of Oxycontin. Additionally, based on Plaintiff's evidence, Plaintiff did not explain to Defendant exactly why he thought Oxycontin would not be effective. He simply told Defendant it did not work in the past. He provided no examples, and he has presented no evidence that there are records in his medical file indicating that Oxycontin is ineffective on him.

Therefore, even taking all of Plaintiff's evidence as true and construing it in the light most favorable to Plaintiff, Defendant's evidence that he used his professional judgment is undisputed and Plaintiff's evidence would only establish at most a difference of opinion as to

---

[2] Dr. Barnett is a California licensed physician, and has been since 1978. (ECF No. 31-4, p. 1, ¶ 1). He graduated from Harvard Medical School in 1975, and has "more than thirty years of experience in the fields of Family Medicine, Urgent Care, and Emergency Medicine."

7

the medication Plaintiff should have been prescribed. As described above, Plaintiff cannot "base a constitutional claim on a difference of opinion with medical staff regarding the nature of appropriate medical treatment." Cranford, 2008 WL 5450354, at *4. Accordingly, the Court will recommend that Defendant's motion for summary judgment be granted.

## IV. CONCLUSION AND RECOMMENDATION

Because, even taking all of Plaintiff's evidence as true and construing it in the light most favorable to Plaintiff, there is at most a difference of opinion as to the medication Plaintiff should have been prescribed, the Court finds that Defendant's motion for summary judgment should be granted.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment be GRANTED; and
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 21, 2018**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE